UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NWORA ADIM, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 1:23-cv-12525-IT |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent. | * | |

MEMORANDUM & ORDER

August 22, 2024

TALWANI, D.J.

In the pending Petition for Writ of Error Coram Nobis ("Petition") [Doc. No. 1], Petitioner Nwora Adim asks this court to grant a writ of coram nobis and vacate his 1981 convictions under 18 U.S.C. § 922(e) for delivering firearms for shipment in interstate and foreign commerce, on the grounds that his counsel committed a fundamental error during those criminal proceedings by failing to ask the court for a judicial recommendation against deportation ("JRAD"). The government has moved to dismiss the Petition. Mot. to Dismiss Petition for Writ of Error Coram Nobis [Doc. No. 9]. For the reasons that follow, the government's Motion to Dismiss [Doc. No. 9] is GRANTED.

I. **Background**

A. *Adim's Immigration to the United States and his 1981 Conviction*

Adim immigrated to the United States from Nigeria in 1973 and became a permanent resident of the United States in 1975. Aff. of Nwora Adim ISO Pet. for Writ of Error Coram Nobis ("Adim Aff.") ¶¶ 16-18 [Doc. No. 3-1]. In 1980, Adim was arrested for delivering guns to Eastern Airlines and Air France in violation of 18 U.S.C. § 922(e), which prohibits delivering

firearms or ammunition to any common or contract carrier for transportation in interstate or foreign commerce without an export license. Id. ¶¶ 21–22.

On May 14, 1981, Adim was indicted on one count of dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1) (Count I), one count of delivering firearms, namely, three Remington Model 870 12-gauge shotguns, to a common carrier, Eastern Airlines, without a license in violation of 18 U.S.C. § 922(e) on October 27, 1980 (Count II), and one count of delivering firearms, namely, nine Remington Model 1100 12-gauge shotguns, to a common carrier, Air France, on February 24, 1981 (Count III). Indictment [Doc No. 9-1].

Adim hired attorney Frank G. Kelleher as counsel for his defense. Adim Aff. ¶ 22 [Doc. No. 3-1]. Adim told Kelleher that he was an immigrant and permanent resident, and Kelleher negotiated a plea deal that allowed Adim to avoid incarceration. Id. ¶ 23. Adim asserts that Kelleher did not tell him that a guilty plea would have collateral immigration consequences. Id. ¶ 24. Adim alleges that, had he been told that pleading guilty would affect his immigration status and ability to travel between the United States and Nigeria, he would not have accepted the plea deal. Id.

Adim pleaded guilty to Counts II and III and was sentenced to one year of incarceration, with execution of the sentence suspended for three years while on probation. Ex. G (Judgment and Probation Commitment Order) [Doc. No. 3-6]. The government subsequently agreed to dismiss Count I, and. Ex. G (Dismissal of Count I of Indictment) [Doc. No. 3-7].

B.  *Relevant Immigration Provisions*

    1.    At the Time of Sentencing

Section 241 of the Immigration and Nationality Act (INA) was enacted in June 1952 and remained operative in 1981, at the time of Adim's convictions.[1] It provided for the deportation of any noncitizen under two provisions relevant here. Section (a)(4) provided for the deportation of any noncitizen who:

> is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefore and regardless of whether the convictions were in a single trial.

Pub. L. 82-414 § 241(a)(4), 66 Stat. 204 (June 27, 1952) (emphasis added). The government contends that this provision did not apply to Adim at the time of his conviction because he had entered the United States more than five years earlier. Adim contends that this provision applied to him (and that he was not provided that information) because the two counts of conviction, which occurred on different days and involved different guns and different carriers, would not be considered a single scheme.

At the time of Adim's conviction, Judicial Recommendations Against Deportations, or JRADs, were authorized by the INA to offer an exception to deportations of noncitizens who were rendered deportable by § 1251(a)(4). The operative version of the statute at the time of Adim's conviction stated that "[t]he provisions of subsection (a)(4) respecting the deportation of a[] [noncitizen] convicted of a crime or crimes shall not apply . . . if the court sentencing such [noncitizen] for such crime shall make . . . a recommendation to the Attorney General that such [noncitizen] not be deported . . . ." 8 U.S.C. § 1251(b) (1988).

---

[1] Section 241 of the INA was also known as 8 U.S.C. § 1251.

Section (a)(14) of the operative version of the INA at the time of Adim's convictions also rendered deportable a noncitizen who "at any time after entry, shall have been convicted of possessing or carrying in violation of any law any weapon which shoots or is designed to shoot automatically or semiautomatically more than one shot without manual reloading, by a single function of a trigger, or a weapon commonly called a sawed-off shotgun." Id. § 214(a)(14). Adim contends that his convictions could have been considered a deportable offense under this provision of the INA because nine of the firearms he was convicted of delivering were shotguns described by Remington as the "'foundation of the Remington autoloading legacy.'" Pet. Opp. 2 [Doc. No. 12] (quoting Remington Autoloading Shotguns, https://www.remarms.com/shotguns/autoloading/).

The JRAD provision did not cover deportations under subsection (a)(14).

2.    Subsequent Amendments

The Anti-Drug Abuse Act of 1988 amended Section (a)(4) to also include as deportable any noncitizen "convicted of an aggravated felony at any time after entry." Pub. L. 100-690, Title VII, § 7344(a), 102 Stat. 4470 (Nov. 18, 1988) (emphasis added). It also expanded Section (a)(14), no longer limiting deportability to automatic and semiautomatic firearms but rendering deportable any noncitizen convicted of possessing or carrying "any firearm or destructive device." 8 U.S.C. § 1251(a)(14) (1988). Both parties agree that Adim is deportable under the provisions following the 1988 amendments.

The JRAD statute was repealed in 1990. Immigration Act of 1990, Pub. L. No. 101-649, § 505, 104 Stat. 4978, 5050 (Nov. 29, 1990). Any JRAD issued after November 29, 1990 is invalid and not recognized by courts. See United States v. Bodre, 948 F.2d 28, 35 (1st Cir. 1991).

In 1996, 8 U.S.C. § 1251 was redesignated as 8 U.S.C. § 1227. Under the current statute, as relevant here, a noncitizen who: is convicted of a crime involving moral turpitude committed

4

within 10 years after the date of admission if the person is a lawful permanent resident and the crime is one for which a sentence of one year or longer may be imposed; is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct; is convicted of an aggravated felony <u>at any time after admission</u>, or who is convicted under any law of purchasing, selling, or possessing a firearm, is deportable. 8 U.S.C. § 1227(a)(2)(A)(i), (ii), (iii), & (C) (emphasis added).

  C. *Ongoing Consequences of Adim's Conviction*

  Adim served his sentence in full, through payment of a $5,000 fine in lieu of community service hours, by January 1984. Pet. Mem 6 [Doc. No. 3]. Adim alleges that he was unable to find employment in finance, his field of study, because of his criminal record. <u>Id.</u> ¶ 25. Instead, he worked as a taxi driver for thirty years. <u>Id.</u>

  Additionally, Adim asserts that the last time he returned home to Nigeria was in 2000, after which he was informed by a friend that "immigrants with criminal charges could not travel outside of the United States, for fear of not being able to be allowed back in." <u>Id.</u> ¶ 26. Adim does not claim that he is currently in imminent danger of being deported; rather, he asserts that there is no other remedy to his deportability, which he considers a "continuing collateral consequence" of his conviction. Pet. Mem. 17 [Doc. No. 3]. Adim must now refrain from applying to naturalize, traveling abroad, or applying to renew his ten-year permanent resident card, for fear of bringing his deportability to the attention of immigration authorities. Aff. of Attorney Kathleen Gillespie 5 [Doc. No. 3-15]. He has not returned to Nigeria since learning that he might not be permitted to reenter the United States, but recent events, including the deaths of three of his sisters in 2020 and 2021 from strokes, and his own bladder cancer diagnosis, have increased his desire to be able to visit. <u>Adim Aff.</u> ¶¶ 28–29 [Doc. No. 3-1]. Adim does not want

to return to Nigeria permanently but seeks the ability to visit his home country and family and return to the United States freely without fear of being denied reentry. Id. ¶ 32. He cites his need for continuing cancer treatment, his family history of strokes, and concerns that he would be robbed or subjected to religious violence if he returned permanently to Nigeria as reasons he does not want to be forced to remain in Nigeria if he visits. Id. ¶¶ 29–32. For Adim, "the best-case scenario would be to freely visit routinely but briefly." Id. ¶ 32.

    D.  *Adim's Efforts for Post-Conviction Relief*

Adim never requested habeas relief because he believed he was "not in custody" after his plea. Id. 18.

In 2014, Adim hired Attorney William E. Graves for help in becoming a naturalized United States citizen. Supplemental Aff. of Pet. Nwora Adim ("Supp. Adim Aff.") ¶ 2 [Doc. No. 12-1]. After filing an N-400 Application for Naturalization and receiving no response, Adim consulted Attorney John Loscocco, who advised Adim that his 1981 convictions would likely impact his ability to naturalize. Id. ¶¶ 3–5. Loscocco withdrew Adim's application in 2016. Id. ¶ 6. Adim contends that he "has been working since he was alerted to the potential issue of his convictions impacting his ability to apply for citizenship in the United States to address these convictions through any available route." Pet.'s Opp. to Government's Mot. to Dismiss Pet. for Writ of Error Coram Nobis 4 ("Pet. Opp.") [Doc. No. 12].

At some point after 2016, Adim hired Demissie & Church, his current counsel. Supp. Adim Aff. ¶ 8 [Doc. No. 12-1]. Adim asserts that he did not know about the remedy of coram nobis as an option until he retained Demissie & Church. Id. ¶ 9.

Adim filed his Petition for Writ of Error Coram Nobis [Doc. No. 1] on October 24, 2023.

6

## II.      Standard of Review

A writ of error coram nobis is a remedy of last resort that acknowledges and corrects a court's previous fundamental errors of fact or law. Williams v. United States, 858 F.3d 708, 711 (1st Cir. 2017) (quoting United States v. George, 676 F.3d 249, 253 (1st Cir. 2012)). Coram nobis is an extraordinary remedy, meant only to be available "under circumstances compelling such action to achieve justice." Murray v. United States, 704 F.3d 23, 28 (1st Cir. 2013) (quoting United States v. Morgan, 346 U.S. 502, 511 (1954)). The writ of coram nobis may not be issued when any other remedy, including habeas corpus, is still available to the petitioner. Murray, 704 F.3d at 28.

From its origin in sixteenth-century England, where coram nobis was used by courts to correct only fact-based errors, the writ has become flexible enough to reach "fundamental legal errors" committed by the courts as well. Trenkler v. United States, 536 F.3d 86, 93 (1st Cir. 2008). Fundamental errors are those that "render the proceeding itself irregular and invalid." Murray, 704 F.3d at 28. Similarly, while the modern writ of error coram nobis is used predominantly in criminal cases, its "character necessarily reflects the vestiges of its origins in civil litigation" and coram nobis proceedings are seen as a hybrid, "quasi-civil and quasi-criminal." Id. at 94. Consequently, the First Circuit has held that coram nobis proceedings are appealable as civil matters and that any party may appeal the grant or denial of the writ as a final order. Id. at 95.

To determine a petitioner's eligibility for the writ, the First Circuit has established a three-part test:

> [A] coram nobis petitioner must [1] explain his failure to seek earlier relief from judgment, [2] show that he continues to suffer significant collateral consequences from the judgment, and [3] demonstrate that the judgment resulted from an error of the most fundamental character.

George, 676 F.3d at 254. Even if a petitioner meets all three of the above conditions, the court retains ultimate discretion to grant or deny the writ in the interests of justice and as dependent on the facts of the case. Murray, 704 F.3d at 29.

### III.    Discussion

Adim asks for a writ of error coram nobis because his counsel in his 1981 criminal proceeding committed a fundamental error by not requesting a JRAD. Pet. Mem. 13 [Doc. No. 3]. Adim believes that his counsel's failure to request a JRAD constituted ineffective assistance of counsel in violation of the Sixth Amendment. Because Adim has not adequately explained his failure to seek earlier relief, and because he was and is deportable under a provision of the INA which was never eligible for a JRAD, the court denies the Petition.

### A.  *Timeliness and Failure to Explain Not Seeking Earlier Relief*

Petitioners seeking coram nobis relief have a responsibility to do so within a reasonable amount of time to prevent the great difficulty and prejudice to the government that results from trying to adjudicate an error from many years ago. See United States v. Osser, 864 F.2d 1056, 1061-62 (3rd Cir. 1988) (holding the fifteen years that passed between the original conviction and the petition, although not entirely the petitioner's fault, was too long a period after conviction and would "disproportionately harm the prosecution."). If a petitioner fails to request coram nobis relief in a reasonable amount of time following conviction, they must offer "sound reasons" to explain their failure. See Kiger v. United States, 315 F.2d 778, 779 (7th Cir. 1963).

Adim pleaded guilty in 1981 and had served his sentence in full by January 1984. Pet. for Writ 6 [Doc. No. 3]. Adim explains that he never sought habeas relief because he believed he was ineligible because he was not in custody following his plea. Id. 18. But Adim was put on federal probation, which satisfies the "in custody" requirement of habeas petitions. 28 U.S.C.

§ 2255; see Tinder v. Paula, 725 F.2d 801, 803 (1st Cir. 1984). Though Adim may not have understood that he was eligible, this belief was erroneous, and he could have sought habeas relief during his three years on probation.

Then, in 2000, Adim learned that he might not be allowed to return to the United States if he left the country. Adim does not explain his failure to take action regarding his immigration status in 2000 or for years after learning of his precarious status.

Adim's opposition to the government's motion to dismiss offers that he "has been working since he was alerted to the potential issue of his convictions impacting his ability to apply for citizenship in the United States [in 2016] to address these convictions through any available route." But Adim's Petition seeks relief on the ground that his counsel failed, in 1981, to seek a JRAD or alert him to the potential immigration consequences of taking a guilty plea, in general, including his inability to travel freely to Nigeria. Where these consequences took root at the latest in 1988, and Adim admittedly knew of them in 2000, Adim has not properly explained his failure to seek earlier relief from judgment.

Accordingly, Adim is not eligible for coram nobis relief. See George, 676 F.3d at 254.

B. *Fundamental Error*

Even if Adim's Petition were timely, it also does not establish that a fundamental error occurred in his underlying criminal proceeding.

Ineffective assistance of counsel in violation of the Sixth Amendment is recognized as a fundamental error for purposes of coram nobis relief. United States v. Khalaf, 116 F. Supp. 2d 210, 213 (D. Mass. 1999) (citing Morgan, 346 U.S. at 511). However, to prove ineffective assistance of counsel, a petitioner must show that: 1) their counsel's performance fell below an objective standard of reasonableness; and 2) the petitioner suffered prejudice as a result of the

deficient 'performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney's failure to advise a criminal defendant of the immigration consequences of a guilty plea is now considered to fall below an objective standard of reasonableness. Padilla v. Kentucky, 559 U.S. 356 (2010). But Padilla is not retroactive and does not apply where a defendant's conviction became final prior to Padilla, as did Petitioner's. Chaidez v. United States, 568 U.S. 342, 358 (2013).

Adim has not established that his counsel performed unreasonably by failing to request a JRAD and that he suffered prejudice as a result of that deficient performance. Regardless of whether he was eligible for deportation under (a)(4) (for which a JRAD could have been issued at the time), a JRAD was never available to prevent deportation under (a)(14). And while the parties dispute whether (a)(14) was applicable at the time of his conviction, there is no dispute that since at least 1988, he has been deportable under that subsection. Accordingly, if Adim was deportable under (a)(14) at the time of conviction, as Adim contends, it could not have been error for Adim's counsel to fail to request a JRAD because a JRAD was unavailable to prevent deportation under (a)(14). And if Adim became deportable under (a)(14) in 1988, as the government contends, Adim can show no prejudice as a result of his counsel's failure to seek a JRAD regarding deportation under (a)(4).

Accordingly, Adim has not demonstrated that there was a fundamental error in his underlying criminal proceeding, and therefore has not met the requirements for a writ of error coram nobis.

**IV.     Conclusion**

For the foregoing reasons, the government's Motion to Dismiss [Doc. No. 9] is GRANTED and Petitioner Adim's Petition for Writ of Error Coram Nobis [Doc. No. 1] is DENIED.

IT IS SO ORDERED

August 22, 2024                                           /s/Indira Talwani
                                                          United States District Judge